**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

TEMURBEK HIKMATULLAEV, an
individual, and ASATILLA
YAKVALKHODJAEV, an individual,

       Plaintiff,              Case No.

      v.

MARCO ALESSANDRO VILLA, an
individual, ALESSIO MULASSO, an
individual, and GIORGIO MARIANI, an
individual, LUMECH, INC., a Florida
corporation, and JOHN DOES 1-25, unknown
individuals.

       Defendants,

   and

COINBASE, INC., a Delaware corporation,

       Third-Party Respondents.

_____/

## **COMPLAINT**

Plaintiffs, Temurbek Hikmatullaev ("Hikmatullaev") and Asatilla Yakvalkhodjaev ("Yakvalkhodjaev")(collectively, the "Plaintiffs") sue Marco Alessandro Villa, an individual ("Villa"), Alessio Mulasso, an individual ("Mulasso"), Giorgio Mariani, an individual ("Mariani"), Lumech, Inc., a Florida corporation ("Lumech"), and JOHN DOES 1-25, currently unknown and unnamed individuals (the "Unknown Defendants")(collectively the "Defendants"), for conversion, fraud, breach of contract, unjust enrichment, civil conspiracy and unfair trade practices. Plaintiffs also seek injunctive relief and/or a constructive trust against third-party Coinbase, Inc. ("Coinbase"). Plaintiffs state as follows in support:

ClarkHill\L9658\467155\272024188.v1-6/21/23

## NATURE OF THE ACTION

1.      In May 2023, Hikmatullaev sought to purchase a rare Richard Mille watch ("Watch"), valued at $1,000,000 as a gift. Villa represented to Hikmatullaev that he possessed the Watch, and agreed to sell the Watch to Hikmatullaev for $1,000,000. Because time was of the essence, the parties agreed to complete the purchase using an equivalent value of U.S. Dollar Token (USDT) cryptocurrency assets. Hikmatullaev transferred $1,000,086 USDT to Villa's Coinbase Wallet, but Villa never tendered the Watch.

2.      Upon information belief, Villa never intended to tender the Watch to Hikmatullaev. Rather, the Defendants falsely represented that Villa intended to sell the Watch as part of an intentional scheme to defraud the Plaintiffs of $1,000,086 USDT (the "Stolen Assets"). Indeed, it appears that Defendants never owned a legitimate Richard Mille Watch.

3.      Plaintiffs have informed the Federal Bureau of Investigation ("FBI") of Defendants' fraud, and now Plaintiffs bring this action to seek recovery of the funds that Defendants converted from Plaintiffs and has not returned.

4.      Due to the size of the transaction, the clear evidence of fraud, and Defendants' international connections, there is a substantial likelihood that Defendants will flee the country and abscond with Plaintiffs' Stolen Assets. Plaintiffs, accordingly, contemporaneously move this Court pursuant to a Combined Motion for Temporary Restraining Order and Preliminary Injunction for an order restricting Defendants' cryptocurrency accounts with Coinbase, placing a constructive trust on the Stolen Assets and/or such further other equitable relief this Court deems necessary to prevent the Defendants' dissipation of Plaintiffs' Stolen Assets.

ClarkHill\L9658\467155\272024188.v1-6/21/23

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff Hikmatullaev is a dual citizen of the United States and Uzbekistan, and is not domiciled in the United States.

6.     Plaintiff Yakvalkhodjaev is a citizen of Uzbekistan, and is not domiciled in the United States.

7.     Defendant Villa is an individual, who, upon information and belief, is a citizen of a foreign state, but is domiciled in Miami Beach, Florida.

8.     Defendant Mulasso is an individual, who, upon information and belief, is a citizen of a foreign state, but is domiciled in Boca Raton, Florida.

9.     Defendant Mariani is an individual, who, upon information and belief, is a citizen of a foreign state, but is domiciled at 732 N.W. 7th Ave., Miami, FL 33136.

10.     Defendants John Doe 1-15 are persons currently unknown to Plaintiffs but who, on information and belief, are subject to the jurisdiction of this Court and are complicit in the complained of facts.

11.     Defendant Lumech, Inc. is a Florida corporation with its principal place of business in Miami Beach, Florida.

12.     Third-Party Coinbase is a Delaware corporation with its principal place of business in Wilmington, Delaware.

13.     Venue is proper in this Federal District under 28 U.S.C. § 1391(1) and (2) because a Defendant resides in this district and because a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district.

ClarkHill\L9658\467155\272024188.v1-6/21/23

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of a State (Lumech) and citizens or subjects of a foreign state (Plaintiffs).

## FACTS COMMON TO ALL COUNTS

15. In May 2023, Hikmatullaev sought to purchase a rare Richard Mille Watch as a gift.

16. Hikmatullaev was introduced to Villa by Milasso and Mariani. The Defendants represented that Villa owned the Watch that Hikmatullaev sought to purchase.

17. Villa stated that he operated through Lumech.

18. Villa agreed to sell the Watch to Hikmatullaev, through Lumech, for $1,000,000.

19. Hikmatullaev agreed to purchase the Watch for $1,000,000.

20. Because time was of the essence, the parties agreed to make the payment through an equivalent amount of cryptocurrency assets.

21. Specifically, the parties agreed to conduct the transaction using Tether's U.S. Dollar Token ("USDT"), a stablecoin that generally maintains a value equal to the U.S. Dollar. Thus, the parties agreed that Hikmatullaev would send Villa $1,000,000 USDT in exchange for selling the Watch to Hikmatullaev.

22. Because Hikmatullaev did not have an active cryptocurrency account, Hikmatullaev used Yakvalkhodjaev's Binance account to facilitate the transfer of USDT assets for the purchase of the Watch. However, Hikmatullaev funded the transaction with his own assets.

23. Based on their prior agreement, Defendants Villa, Mulasso and Mariani, together with a representative of Plaintiff Hikmatullaev, named Reece Frederik ("Frederik"), met at Villa's home on May 13, 2023 in Miami Beach, Florida to complete the transaction for the Watch.

ClarkHill\L9658\467155\272024188.v1-6/21/23

24.     To ensure the transfers were correctly routed, the parties agreed to send the $1,000,000 USDT purchase price in a series of transactions.

25.     On May 13, 2023, Hikmatullaev sent an initial test transaction of $86 USDT originating from Yakvalkhodjaev's Binance wallet (0xb1e71124c008f7008b330520be3e9df2b0273d8A) ("Yakvalkhodjaev's Wallet") to Villa's Coinbase wallet (0xB7d58dF3C80C12948FC14aAa0cc4d1bE1DCD4163) ("Villa's Coinbase Wallet").

26.     Villa confirmed that his Coinbase Wallet received the $86 USDT transfer from Yakvalkhodjaev Wallet (the "$86 USDT Transfer").

27.     On May 13, 2023, Hikmatullaev sent a second transaction of $100,000 USDT originating from Yakvalkhodjaev's Wallet to Villa's Coinbase Wallet.

28.     Villa confirmed that his Coinbase Wallet received the $100,000 USDT transfer from Yakvalkhodjaev's Wallet (the "$100,000 USDT Transfer").

29.     On May 14, 2023, Hikmatullaev sent the third and final transaction of $900,000 USDT originating from Yakvalkhodjaev's Wallet to Villa's Coinbase Wallet.

30.     Villa confirmed that his Coinbase Wallet received the $900,000 USDT transfer from Yakvalkhodjaev Wallet, but indicated that Coinbase flagged the transaction as suspicious and therefore would release the $900,000 USDT transfer after its review of the transaction (the "$900,000 USDT Transfer") and, in light of the asserted refusal by Coinbase to transfer the USDT funds, Villa refused to tender the Watch as agreed.

31.     Upon information and belief, Villa's statements about Coinbase suspending and not releasing the $900,000 USDT Transfer were false, and were specifically intended to cause delay and allow Defendants to abscond with Hikmatullaev's Stolen Assets.

32. On May 15, 2023, Villa issued a false invoice through Lumech, acknowledging the sale of the Watch but incorrectly stating the amount received from Plaintiffs.

33. Upon information and belief, Villa issued the false invoice to gain Hikmatullaev's trust by making his fraudulent transaction appear legitimate.

34. Thereafter, Defendants made further statements regarding Villa's intention to complete the transaction for the Watch.

35. Upon information and belief, Villa's further statements about completing the transaction were false, and were specifically intended to cause delay and allow Defendants to abscond with Hikmatullaev's Stolen Assets.

36. During those conversation, Defendants represented that they both owned and had possession of the Watch, which they had placed in a safety deposit box in a Florida bank.

37. Plaintiff Villa showed the Watch to Frederik, who was acting on behalf of the Plaintiffs, and represented to Frderik that the Watch was a genuine Richard Mille watch.

38. Upon information and belief, the Watch was not legitimate, and/or Villa never intended to consummate the transaction for the sale of the Watch with Hikmatullaev.

39. Upon information and belief, Defendants displayed the Watch to Plaintiff Hikmatullaev's representative to create a false sense of security that Defendants intended to complete the transaction and to delay Plaintiffs' discovery of Defendants' fraud.

40. Upon information and belief, Villa's statements about his ownership and/or intention to sell the Watch were false, and were specifically intended to cause delay and allow Defendants to abscond with Hikmatullaev's Stolen Assets.

41. During ongoing conversations between the parties following the $900,000 USDT Transfer, Villa returned $188,000 USDT to Plaintiffs. Villa returned $188,000 USDT despite

ClarkHill\L9658\467155\272024188.v1-6/21/23

originally claiming that only the $86 USDT Transfer and the $100,000 USDT Transfer were deposited in his Coinbase Wallet.

42.     Defendants then made further statements about refunding the remaining $812,086 USDT that Hikmatullaev transferred to Villa for the purchase of the Watch. However, Villa has not returned those funds to the Plaintiffs despite numerous demands.

43.     Upon information and belief, Defendants' statements about refunding the remaining $812,086 USDT were false, and were specifically intended to cause delay and allow Defendants to abscond with Hikmatullaev's Stolen Assets.

44.     As of the date of this Complaint, Villa has not tendered the Watch to Hikmatullaev and has not refunded the remaining $812,086 USDT that he received from Plaintiffs.

45.     There is a substantial likelihood that Defendants will abscond with or dissipate the Stolen Assets based on:

   a.   The clear fraud evidenced by Defendants' receipt of $812,086 USDT without providing the Watch in return as promised;

   b.   The potential pendency of the cybercrime investigation by the FBI;

   c.   Defendants' substantial international ties;

   d.   Defendants' false statements about their personal finances; and

   e.   The ability to easily and untraceably move cryptocurrency into accounts controlled by foreign actors.

### COUNT I
### CONVERSION
(Against All Defendants)

46.     Plaintiffs incorporate paragraphs 1-45 above by reference as if fully restated herein this Count.

ClarkHill\L9658\467155\272024188.v1-6/21/23

47. Defendants have assumed dominion over the Stolen Assets that is inconsistent with the rights of Plaintiffs, the true owner.

48. The Defendants have wrongfully deprived Plaintiffs of the Stolen Assets.

49. The Defendants have failed to return the Stolen Assets to Plaintiffs.

50. Plaintiffs are entitled to a return of the Stolen Assets and all other incidental and consequential damages they have suffered a result of the Defendants wrongfully depriving them of their property.

51. Plaintiffs are also entitled to injunctive relief to prevent Defendants from dissipating and/or absconding with Stolen Assets.

## Prayer for Relief

WHEREFORE, for the reasons set forth above, Plaintiffs request that this Court enter judgment in their favor and against the Defendants for:

a. Actual damages of $812,086.00;

b. Injunctive relief in the form of restricting transfers in Defendants' accounts with Coinbase, and any other account in which the Stolen Assets are traced and/or imposing a constructive trust on the Stolen Assets wrongfully transferred to Defendants' accounts with Coinbase by Defendants;

c. Consequential and incidental damages, including but not limited to, attorneys' fees and costs; and

c. Any other relief this Court deems appropriate and equitable.

## COUNT II
## BREACH OF CONTRACT
(Against Villa and Lumech)

ClarkHill\L9658\467155\272024188.v1-6/21/23

52. Plaintiffs incorporate paragraphs 1-45 above by reference as if fully restated herein this Count.

53. Villa offered to sell Hikmatullaev the Watch for $1,000,000 USDT.

54. Hikmatullaev accepted Villa's offer to sell the Watch for $1,000,000 USDT.

55. Villa's offer and Hikmatullaev's acceptance formed a contract for the sale of the Watch.

56. Hikmatullaev fully performed under the terms of the contract by making payment for $1,000,000 USDT.

57. Villa issued a false invoice purporting to conduct the transaction through Lumech.

58. Villa breached the contract by failing to deliver the Watch after receipt of payment from Hikmatullaev.

59. Hikmatullaev made due demand on Villa to deliver the Watch, but Villa has refused.

60. Hikmatullaev made due demand on Villa for a refund of the remaining $812,086 USDT, but Villa has refused.

61. Plaintiffs are also entitled to injunctive relief to prevent Defendants from dissipating and/or absconding with Stolen Assets.

### Prayer for Relief

WHEREFORE, for the reasons set forth above, Plaintiffs requests that this Court enter judgment in their favor and against Villa and Lumech for:

a. Actual damages of $812,086.00;

b. Rescission of the contract;

c. Injunctive relief in the form of restricting transfers in Defendants' accounts with

ClarkHill\L9658\467155\272024188.v1-6/21/23

Coinbase, and any other account in which the Stolen Assets are traced and/or imposing a constructive trust on the Stolen Assets wrongfully transferred to Defendants' accounts with Coinbase by Defendants;

d.  Consequential damages, incidental damages, and cost; and

e.  Any other relief this Court deems appropriate and equitable.

## COUNT III
### FRAUD
(Against All Defendants)

62.  Plaintiffs incorporate paragraphs 1-45 above by reference as if fully restated herein this Count.

63.  As set forth above, Defendants falsely stated that they intended to sell the Watch, falsely stated that $900,000 of the amount transmitted as partial payment for the Watch was held for review by Coinbase, falsely stated that they intended to complete the transaction for the Watch, and falsely stated that they intended to refund to Plaintiffs the money received for the purchase of the Watch.

64.  The Defendants knew these statements were false at the time these statements were made.

65.  The Defendants made these false statements with the purpose of inducing Plaintiffs to send $1,000,086 USDT to Defendants, with no intention of delivering the Watch, and to delay and hinder the Plaintiffs' ability to discover Defendants' fraud while the Defendants absconded with the Stolen Assets.

66.  Plaintiffs reasonably relied upon Defendants' false statements to their detriment.

67.  Plaintiffs were damaged by the Defendants' false statements.

ClarkHill\L9658\467155\272024188.v1-6/21/23

68. The Defendants' acts were with actual malice, willfulness, gross negligence, and a wanton disregard for Plaintiffs' rights.

69. Plaintiffs are entitled to recover the Stolen Assets, and all other incidental and consequential damages resulting from the Defendants' fraud, as well as punitive damages.

70. Plaintiffs are also entitled to injunctive relief to prevent Defendants from dissipating and/or absconding with Stolen Assets.

## Prayer for Relief

WHEREFORE, for the reasons set forth above, Plaintiffs requests that this Court enter judgment in their favor and against the Defendants for:

a. Actual damages of $812,086.00;

b. Injunctive relief in the form of restricting transfers in Defendants' accounts with Coinbase, and any other account in which the Stolen Assets are traced and/or imposing a constructive trust on the Stolen Assets wrongfully transferred to Defendants' accounts with Coinbase by Defendants;

c. Consequential and incidental damages, including but not limited to attorneys' fees, and costs;

d. Punitive damages; and

e. Any other relief this Court deems appropriate and equitable.

## COUNT IV
## CIVIL CONSPIRACY
(Against All Defendants)

71. Plaintiffs incorporate paragraphs 1-45 above by reference as if fully restated herein this Count.

ClarkHill\L9658\467155\272024188.v1-6/21/23

72.     After Defendants learned that Hikmatullaev desired to purchase the Watch, the Defendants formed a conspiracy to defraud Hikmatullaev.

73.     Under the conspiracy, the Defendants agreed between and among themselves and with each other to make false statements to Hikmatullaev that they possessed and intended to sell Hikmatullaev the Watch for $1,000,000.

74.     Defendants had no intention of selling Hikmatullaev the Watch. Rather, Defendants made these false statements to defraud Hikmatullaev of the purchase price for the Watch.

75.     Defendants engaged in numerous overt acts to carry out this conspiracy including:

    a.   Making arrangements and attending meetings for the sale of the Watch;

    b.   Directing Hikmatullaev to make the $86 USDT Transfer;

    c.   Directing Hikmatullaev to make the $100,000 USDT Transfer;

    d.   Directing Hikmatullaev to make the $900,000 USDT Transfer;

    e.   Falsely stating that the $900,000 USDT Transfer was suspended by Coinbase;

    f.   Making false statements about the location of the Watch; and

    g.   Falsely stating they intended to refund Stolen Assets.

76.     The Defendants acted with actual malice, willfulness, gross negligence, and a wanton disregard for Plaintiffs' rights.

77.     Plaintiffs were damaged by Defendants' civil conspiracy.

78.     Plaintiffs are entitled to recover the Stolen Assets, and all other incidental and consequential damages resulting from the Defendants' Civil Conspiracy.

79.     Plaintiffs are also entitled to injunctive relief to prevent Defendants from dissipating and/or absconding with Stolen Assets.

### Prayer for Relief

WHEREFORE, for the reasons set forth above, Plaintiffs requests that this Court enter judgment in their favor and against the Defendants for:

a. Actual damages of $812,086.00;

b. Injunctive relief in the form of restricting transfers in Defendants' accounts with Coinbase, and any other account in which the Stolen Assets are traced and/or imposing a constructive trust on the Stolen Assets wrongfully transferred to Defendants' accounts with Coinbase by Defendants;

c. Consequential and incidental damages, including but not limited to, attorneys' fees, and costs;

d. Punitive damages; and

e. Any other relief this Court deems appropriate and equitable.

### COUNT V
### UNJUST ENRICHMENT
(In the Alternative; against All Defendants)

80. Plaintiffs incorporate paragraphs 1-45 by reference as if fully restated herein this Count.

81. Plaintiffs conferred a benefit of $812,086.00 USDT on Defendants, who have knowledge thereof.

82. Defendants voluntarily accepted and retained the benefit of $812,086.00 USDT that Plaintiffs conferred.

83. The circumstances are such that it would be inequitable for the Defendants to retain the benefit without first paying the value thereof to the Plaintiff. Specifically, Plaintiffs conferred a benefit of $812,086.00 USDT without receiving the benefit of the Watch they intended to purchase.

84.     Plaintiffs are also entitled to injunctive relief to prevent Defendants from dissipating and/or absconding with Stolen Assets.

## Prayer for Relief

WHEREFORE, for the reasons set forth above, Plaintiffs request that this Court enter judgment in their favor and against the Defendants for:

a.     Actual damages of $812,086.00;

b.     Injunctive relief in the form of restricting transfers in Defendants' accounts with Coinbase, and any other account in which the Stolen Assets are traced and/or imposing a constructive trust on the Stolen Assets wrongfully transferred to Defendants' accounts with Coinbase by Defendants;

c.     Consequential and incidental damages, including but not limited to attorneys' fees, and costs;

d.     Punitive damages; and

e.     Any other relief this Court deems appropriate and equitable.

## COUNT VI
## Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*)
(Against All Defendants)

85.     Plaintiffs incorporate paragraphs 1-45 by reference as if fully restated herein this Count.

86.     Defendants' scheme to obtain the Stolen Assets with no intention of selling the Watch to Hikmatullaev was an unconscionable, unfair and deceptive practice in the conduct of trade, in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.*

ClarkHill\L9658\467155\272024188.v1-6/21/23

87. Defendants' unconscionable, unfair and deceptive practice caused actual damage to Plaintiffs, including but not limited to the loss $812,086.00 and other consequential and incidental damages.

88. Plaintiffs are also entitled to injunctive relief to prevent Defendants from dissipating and/or absconding with Stolen Assets that they obtained to their unconscionable, unfair and deceptive practice.

### Prayer for Relief

WHEREFORE, for the reasons set forth above, Plaintiffs request that this Court enter judgment in their favor and against the Defendants for:

f. Actual damages of $812,086.00;

g. Restricting transfers in Defendants' accounts with Coinbase, and any other account in which the Stolen Assets are traced and/or imposing a constructive trust on the Stolen Assets wrongfully transferred to Defendants' accounts with Coinbase by Defendants,

h. Consequential and incidental damages, including but not limited to attorneys' fees under Fla. Stat. § 501.2105, and costs;

i. Punitive damages; and

c. Any other relief this Court deems appropriate and equitable.

ClarkHill\L9658\467155\272024188.v1-6/21/23

Dated:  June 23, 2023                          Respectfully submitted,

By: _/s/ Christina M. Flores_
     Christina M. Flores, Esquire
     Florida Bar No. 125966
     GORDON REES SCULLY MANSUKHANI
     100 S. Ashley Drive, Suite 1290
     Tampa, FL 33602
     Phone: 312-796-2964
     Primary: cflores@grsm.com
     Secondary: kwarrington@grsm.com
     Secondary: rcalvillo@grsm.com


_/s/ Chirag H. Patel_
Chirag H. Patel (*pro hac vice* forthcoming)
CLARK HILL, LLP
130 E Randolph St Suite 3900
Chicago, IL 60601
Ph: 312-985-5900
cpatel@clarkhill.com

Lisa Carney Eldridge (*pro hac vice* forthcoming)
CLARK HILL, LLP
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103-7042
leldridge@clarkhill.com

ClarkHill\L9658\467155\272024188.v1-6/21/23